**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maceo Gray, et al., | No. CV-11-1635-PHX-SMM |
| Plaintiffs, | |
| v. | **MEMORANDUM OF DECISION AND ORDER** |
| American Family Mut. Ins. Co., | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 109.) The matter is now fully briefed. (Docs. 66, 67, 72, 74, 78, 79.) After reviewing the briefs and having determined that oral argument is unnecessary,[1] the Court will grant in part and deny in part Defendant's motion for summary judgment.

## BACKGROUND

*Storm Damage to Plaintiffs' Home*

On Tuesday, October 5, 2010, a wind and hail storm damaged Plaintiffs' home in Scottsdale, Arizona. During the storm, Plaintiff Maceo Gray ("Mace Gray" or "Gray") observed tree branches and other large pieces of debris being hurdled through the air by the force of the wind and striking his home at numerous locations. (Doc. 137-1 at 1.) He also saw and heard large hail stones hitting his home, busting through skylights and breaking

---

[1]Plaintiffs' request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

1   windows, and he saw water entering his home at numerous locations. (Id.) Mace Gray stated

2   that his air conditioning units were working fine before the storm but not working fine after

3   the storm.  (Id.)  Plaintiffs insured their home through Defendant (Doc. 110-1 at 2-19) and

4   first notified Defendant of damage from the storm the following Monday, October 11, 2010.

5   (Doc. 138-1 at 2-3.)

6       On October 11, Defendant's adjuster, Ricky Fine, contacted Plaintiffs and set October

7   17th to go to the home to inspect and evaluate storm damage. (Doc. 137-2 at 4.) Fine came

8   to the home, talked with Mace Gray, and made his evaluation. (Id. at 4-5.) Gray alleges that

9   Fine's inspection was brief and cursory and that Fine was in a hurry to get to his next

10  appointment. (Doc. 137-1 at 3-4.) Gray alleges that Fine only spent 20 minutes at his home,

11  rushing from room to room, snapping a few pictures and moving on without making any

12  more than a quick visual inspection of the exposed surfaces.  (Id.)  During the inspection

13  Gray reported to Fine that one of the air conditioning units on the roof was smoking and

14  making noise.  (Doc. 110-1 at 25.)  Fine inspected and photographed the damaged air

15  conditioning unit on Gray's roof.  (Doc. 137-2 at 7.)

16      Prior to Fine forwarding his damage estimate to Mace Gray, Fine discussed it with

17  Gray over the telephone.  (Doc. 137-2 at 5.)  Gray alleges in this telephone call that he

18  informed Fine that the estimate was totally inadequate and that he could not repair his home

19  for that amount, and  that there was additional damage to the guest bathroom, guest

20  bedrooms, and hallway that were not included in Fine's estimate.  (Doc. 137-1 at 4.)  Gray

21  also states that he told Fine of his worry about mold growth if repairs were not made quickly.

22  (Id.)  According to Gray, Fine acknowledged that there could be additional damage that he

23  missed, and advised Gray that he had an obligation to proceed with repairs in order to

24  mitigate damages.  (Id.)  Gray states also that Fine told him that if he proceeded with repairs,

25  he should keep receipts and make those receipts available to Defendant.  (Id.)  According to

26  Gray, Fine did not state that he wanted to perform an additional inspection of the home for

27  further storm damage before Gray proceeded with repairs.  (Id.)

28      On October 18, 2010, Fine, on behalf of Defendant, sent the damage estimate to

Plaintiffs. (Doc. 110 at 21-27.) Fine found damage to roughly 24 roof tiles, a roof ridge cap, the flat roof, windows, skylights, patio coverings, air conditioning duct work, air conditioning fins, and found that the interior of the home had damage to drywall, insulation, and paint. (Id.) Even though some of the main storm damage was to the guest bathroom, bedrooms, and hallway, Fine listed it as damage to the master bathroom and dressing room. (Doc. 110-1 at 26.) Fine determined that the replacement cost value of the hail damaged items was $12,213.17, and subtracted recoverable depreciation ($3,759.34) and a deductible ($500.00), leaving a total actual cash value settlement of $7,953.83. (Id.) The estimate further indicated that the damaged air conditioning unit would be replaced pending receipt of a technical report regarding its condition. (Id.) The letter also warned Gray about unauthorized work and advised on proper procedures to be followed:

> Please present this estimate to a contractor or repair facility of your choice BEFORE you authorize the start of repairs. If any additional damage or costs are identified, for which you believe we should be responsible, they must be approved by a representative of American Family Insurance prior to having the additional work done. If you, your contractor, or repair facility have any questions, please contact us at (866) 881-4318.

(Doc. 110-1 at 21.)

Gray retained John Holding of Holding Interior Finishes to repair the storm damage listed by Fine and the additional storm damage that Plaintiffs assert affecting the guest bathroom, guest bedrooms and hallway. (Doc. 137-1 at 5.) Gray kept his receipts regarding the cost for completion of that work. (Id.)

On January 28, 2011, Gray submitted to Defendant a repair estimate for $167,907.70 for items he believed were damaged but not accounted for in Defendant's estimate of storm damage. (Doc. 110-1 at 29-30.) Gray alleges that the materials he submitted to Defendant included cash receipts for work he performed in repairing the home, a roofing repair estimate from Suntec Roofing, the invoice documenting interior repairs completed by John Holding, photographs, and two technician reports regarding his damaged air conditioning unit. (Doc. 137-1 at 7.)

Defendant then scheduled a re-inspection of Plaintiffs' home. On February 25, 2011,

Defendant's adjuster Mark Robinett completed a second inspection. (Doc. 137-2 at 5, 17.) During the re-inspection, Robinett found additional storm related damage to: exterior stucco and window screens; great room drywall, insulation, and paint; living room floor; garage drywall, insulation, and paint; office drywall, insulation, and paint; pool expansion joints and pool filter; yard lights; cement bowls; and clay pots. (Doc. 110-1 at 32-44.)

On March 8, 2011, Robinett sent an estimate to Plaintiffs following the re-inspection. (Doc. 110-1 at 32-44.) The additional damages that Robinett found were added to the estimate. (Id.) The estimate stated the summary for the dwelling's replacement cost value was $22,326.69, minus recoverable depreciation ($5,729.46) and the deductible ($500.00), with a total actual cash value of $16,097.23, less payments made ($7,953.83), leaving a total outstanding actual cash value settlement of $8,143.40. The estimate stated that summary for damage to contents was a replacement cost value of $1,899.15, minus recoverable depreciation ($949.58), leaving a total actual cash value of $949.57. In total, on all coverages, the settlement value was $9,092.97. Like the first estimate, this estimate again stated that the damaged air conditioning unit would be replaced pending receipt of a technical report regarding its condition. (Id.)

On March 9, 2011, Defendant sent Plaintiffs a letter determining that the repairs made to the hall, guest bathroom, and bedrooms were made prior to Defendant's inspection. (Doc. 137-3 at 12.) On April 4, 2011, Plaintiffs contacted Defendant disagreeing with the estimate from the re-inspection. (Doc. 110-1 at 53.) Defendant advised that under the terms of the insurance policy, appraisal was the next step in the process and forwarded information regarding that process. (Id.) The parties did not engage in the appraisal process.

On July 14, 2011, Plaintiffs replaced their damaged air conditioning unit. (Doc. 110-1 at 55-60.) The parties dispute whether the reports Plaintiffs submitted constituted a proper technical report. (Doc. 137-4 at 32-33.)

*Insurance Policy*

The insurance policy issued by Defendant to Plaintiffs contained the following relevant terms:

- 4 -

19. **What You Must Do in Case of Loss**. In the event of a loss to property that this insurance may cover, you and any person claiming coverage under this policy must:

> a. give notice as soon as reasonably possible to us or our agent. Report any theft to the police immediately. If the loss involves a credit/debit card, written notice must also be given to the company that issued the card;
> b. protect the property from further damage, make reasonable and necessary repairs to protect the property and keep records of the cost of these repairs;
> c. promptly separate the damaged and undamaged personal property. Give us a detailed list of the damaged property, showing the quantities, when and where acquired, original cost, current value and the amount of loss claimed;
> d. as often as we reasonably require:
>
>> (1) show us the damaged property before permanent repairs or replacement is made;
>> (2) provide us with records and documents we request and permit us to make copies; and
>> (3) let us record your statements and submit to examination under oath by any person named by us, which not in the presence of any other insured, and sign the transcript of the statements and examination.
>> . . .

(Doc. 110-1 at 12.)

## STANDARD OF REVIEW

I.  Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

1    A principal purpose of summary judgment is "to isolate and dispose of factually

2    unsupported claims." <u>Celotex</u>, 477 U.S. at 323-24.  Summary judgment is appropriate

3    against a party who "fails to make a showing sufficient to establish the existence of an

4    element essential to that party's case, and on which that party will bear the burden of proof

5    at trial." <u>Id.</u> at 322; <u>see also</u> <u>Citadel Holding Corp. v. Roven</u>, 26 F.3d 960, 964 (9th Cir.

6    1994).  The moving party need not disprove matters on which the opponent has the burden

7    of proof at trial.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323-24.  The party opposing summary judgment

8    need not produce evidence "in a form that would be admissible at trial in order to avoid

9    summary judgment." <u>Id.</u> at 324.  However, the nonmovant "may not rest upon the mere

10   allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing

11   that there is a genuine issue for trial." FED. R. CIV. P. 56(e); <u>see</u> <u>Matsushita Elec. Indus. Co.,</u>

12   <u>Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-88 (1986); <u>Brinson v. Linda Rose Joint</u>

13   <u>Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).

14   **II.  Breach of Contract–Insurance**

15   A federal court sitting in diversity applies state substantive law. <u>See</u> <u>Hambleton Bros.</u>

16   <u>Lumber Co. v. Balkin Enterprises, Inc.</u>, 397 F.3d 1217, 1227 (9th Cir. 2005).  Thus, this

17   Court applies Arizona law to the interpretation of the insurance contract at issue.  <u>See</u>

18   <u>Benevides v. Arizona Prop. & Cas. Ins. Guar. Fund</u>, 184 Ariz. 610, 613, 911 P.2d 616, 619

19   (App. 1995).  In an action for breach of contract, the plaintiff has the burden of proving "the

20   existence of a contract, breach of the contract, and resulting damages." <u>Chartone, Inc. v.</u>

21   <u>Bernini</u>, 207 Ariz. 162, 170, 83 P.3d 1103, 1112 (App. 2004) (citing <u>Thunderbird</u>

22   <u>Metallurgical, Inc. v. Ariz. Testing Lab.</u>, 5 Ariz.App. 48, 423 P.2d 124 (1976)).

23   Provisions of insurance contracts should be construed according to their plain and

24   ordinary meaning. <u>National Bank v. St. Paul Fire & Marine Ins. Co.</u>, 193 Ariz. 581, 584, 975

25   P.2d 711, 714 (App. 1999). The interpretation of an insurance contract is a question of law,

26   as is the question of whether the contract's terms are ambiguous.  <u>Id.</u>  In Arizona, courts must

27   construe a clause which is subject to differing interpretations by "examining the language of

28   the clause, public policy considerations, and the purpose of the transaction as a whole." <u>State</u>

1    Farm Mut. Auto. Ins. Co. v. Wilson, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989).

2         "Where the contract language is unclear and can be reasonably construed in more than

3    one sense, an ambiguity is said to exist and such ambiguity will be construed against the

4    insurer." Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 534, 647 P.2d 1127, 1132

5    (1982). To determine whether such an ambiguity exists, the contract language "should be

6    examined from the viewpoint of one not trained in law or in the insurance business." Id.

7    Moreover, an insurance policy must be read as a whole to give "'reasonable and harmonious

8    meaning and effect to all its provisions.'" National Bank, 193 Ariz. at 584, 975 P.2d at 714

9    (quoting Federal Ins. Co. v. P.A.T. Homes, Inc., 113 Ariz. 136, 139, 547 P.2d 1050, 1053

10   (1976)).

11        III.  Bad Faith

12        "An insurance contract is not an ordinary commercial bargain; implicit in the contract

13   and the relationship is the insurer's obligation to play fairly with its insured." Zilisch v. State

14   Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (further quotation

15   omitted).  Although insurers do not owe fiduciary duties to their insureds, they do owe some

16   duties of a fiduciary nature including equal consideration, fairness and honesty.  Id.  The

17   insurer is obligated to conduct a prompt and adequate investigation, to act reasonably in

18   evaluating the insured's claim, and to promptly pay a legitimate claim.  Id. at 238, 995 P.2d

19   at 280.

20        "An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes

21   a claim (an "objective" test), and either knows it is acting unreasonably or acts with such

22   reckless disregard that such knowledge may be imputed to it (a "subjective" test)." Nardelli

23   v. Metro. Group Prop. & Cas. Ins. Co., 230 Ariz. 592, 597-98, 277 P.3d 789, 794-95 (App.

24   2012) (citing Zilisch, 196 Ariz. at 238, 995 P.2d at 280). The objective and subjective

25   elements of bad faith are applied to both the insurer's evaluation of the claim and the

26   insurer's claims handling process.  Id.

27        The insurer "may challenge claims which are fairly debatable.  To determine fair

28   debatability, the Court first looks to whether the insurer's actions were objectively

1    reasonable, which is based upon a simple negligence standard–whether the insurance

2    company acted in a manner consistent with the way a reasonable insurer would be expected

3    to act under the circumstances.  Trus Joist Corp. v. Safeco Ins. Co. of Am., 153 Ariz. 95, 104,

4    735 P.2d 125, 134 (App. 1986).  If the insurer acted objectively unreasonably, then the Court

5    moves to the subjective inquiry and determines if the insurer knew or was conscious that its

6    conduct was unreasonable.  Id.  Generally, the insurer's "belief in fair debatability 'is a

7    question of fact to be determined by the jury.'"  Zilisch, 196 Ariz. at 280, 995 P.2d at 279

8    (citing Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 539, 647 P.2d 1127, 1137

9    (1982).  However, if the insured offers no significantly probative evidence that calls into

10   question the insurer's subjective belief in fair debatability, the court may rule on the issue as

11   matter of law. See Knoell v. Metropolitan Life Ins. Co., 163 F. Supp.2d 1072, 1076 (D. Ariz.

12   2001).  Thus, an insurance company can be liable for bad faith for either unreasonably

13   denying a claim that was not fairly debatable or for acting unreasonably in how it processed

14   a claim whether the claim was fairly debatable or not.

15                               **DISCUSSION**

16        I.  Breach of Contract

17        Plaintiffs' allege that Defendant wrongfully denied proper coverage for all their

18   property damaged by the storm. (Doc. 1.) They also contend that Defendant's investigation,

19   evaluation  and  estimate  of  storm  damage  was  unreasonably  inadequate.   (Id.)

20        Defendant moves for summary judgment, arguing that Plaintiffs fail to support their

21   claim that Defendant breached the insurance contract by not adequately paying the claim.

22   (Docs. 109, 142.)  Defendant's position and basis for coverage denial is that Plaintiffs made

23   extensive additional interior repairs to the hallway, guest bathroom and bedrooms that greatly

24   exceeded the estimate provided by their adjuster, Ricky Fine.  (Doc. 142 at 3.)

25         Plaintiffs answer that both Adjuster Fine and Defendant's agent Winston Vineyard

26   told them to proceed with the additional repairs in order to protect the home from further

27   damage.  (Doc. 136 at 9-10.) Plaintiffs object to the language in Defendant's coverage

28   estimate that the insured should contact Defendant if additional damage is discovered,

1  because this language is not part of the insurance policy.  However, Plaintiffs contend that

2  they nevertheless complied with this instruction because Mace Gray did contact Fine about

3  additional damage prior to commencing repairs, repairs that undisputedly exceeded the scope

4  of Fine's estimate.  (Id. at 10.)

5      Defendant contends that Plaintiffs' reliance on Mace Gray's affidavit testimony that

6  Ricky Fine told him to proceed with these additional repairs is misplaced, because in Gray's

7  previous deposition he did not recall any of the details of this conversation with Fine.  (Doc.

8  142 at 4.)  In support, Defendant cites Block v. Los Angeles, 253 F.3d 410, 419, n.2 (9th Cir.

9  2001), which notes that a party cannot create a genuine issue of material fact to survive

10  summary judgment by contradicting his earlier version of the facts.  (Doc. 142 at 4.)

11  Furthermore, Defendant cites Plaintiffs' response to interrogatories, which did not disclose

12  Plaintiffs' alleged conversations with Fine and Vineyard despite Defendant's request that

13  Plaintiffs disclose all communications with representatives of Defendant.  (Doc. 142, Ex. 3.)

14  Defendant further replies that Mace Gray is not competent to opine whether there was mold,

15  nor have Defendants disclosed any expert opinion that mold was discovered during removal

16  of the drywall.  (Doc. 142 at 4.)  Defendant concludes that Plaintiffs had the opportunity to

17  request coverage for the alleged additional damage before making permanent repairs.  (Id.)

18      The Court finds that Plaintiffs fail to establish that Defendant breached the insurance

19  policy by its coverage denial for the alleged additional damage, for the following reasons.

20  First, the policy provides that the insured "show [the insurance company] the damaged

21  property before permanent repairs or replacement is made."  (Doc. 110-1 at 12.)  The Court

22  finds that Plaintiffs failed to contact Defendant regarding alleged additional damage to the

23  guest bathroom, hallway and bedrooms before making permanent repairs.

24      Second, in a motion for summary judgment, this Court examines the entire record and

25  decides the limited question of whether there is a genuine issue as to any material fact.  See

26  Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543 (9th Cir. 1975).  During

27  discovery Defendant sought to learn the factual and evidentiary of Plaintiffs' position, and

28  took Mace Gray's deposition.  Now, however, Plaintiffs, attempt to create a genuine issue

1   of material fact by contradicting Gray's earlier deposition testimony which indicated that

2   Gray did not remember the details of his conversation with Fine. The Court finds that Gray's

3   affidavit does not create a genuine issue of fact, because Mace Gray's affidavit on this point

4   is not consistent with his earlier deposition testimony. Moreover, on this point, Plaintiffs

5   were not forthcoming in response to interrogatories requesting that Plaintiffs disclose all

6   communications with representatives of Defendant.

7       Third, pursuant to Rule 56(e), the affiant must be competent to testify to the matters

8   stated in his affidavit. The Court finds that Mace Gray lacked personal knowledge as to

9   whether there was mold in his home, nor have Plaintiffs disclosed any expert opinion that

10  mold was discovered during removal of the drywall in the guest bathroom, bedrooms and

11  hallway.

12      Finally, the Court does not accept Plaintiffs' attempt to manufacture a dispute

13  regarding the mislabeling of the location of the bathroom in the first estimate. Fine testified

14  that his estimate addressed repairs in the bathroom with the hole in the ceiling that were

15  depicted in his claim photos, and Mr. Robinett testified that he was not confused by the

16  description in the estimate and understood the repairs to have occurred in the guest bathroom,

17  which was the only bathroom that sustained any water damage. (Doc. 137-6 at 3-5; Doc.

18  137-3 at 3-10.)

19      Therefore, Defendant is entitled to summary judgment on this claim. Plaintiffs have

20  failed to establish that Defendant breached the insurance policy by its denial of coverage for

21  the alleged additional damage to the guest bathroom, bedrooms and hallway.

22      II. Air Conditioning Unit

23      Defendant also moves for summary judgment on Plaintiffs' claim for breach of

24  contract relating to the air conditioner. Defendant argues that Plaintiffs fail to support their

25  claim that Defendant breached the insurance policy by denying coverage for damage to their

26  air conditioner. (Docs. 109, 142.) Defendant contends that its coverage denial was proper

27  because Plaintiffs did not provide a valid technical report on the unit verifying the scope of

28  the damage, and instead permanently replaced the unit without prior notice to Defendant.

1    (Id.)

2         At the initial inspection, Gray informed Fine that one of their air conditioner units had

3    been damaged by the storm. (Doc. 137 at 2, 7.) Fine photographed the unit. (Doc. 137-2

4    at 7.) Fine requested that Gray obtain a technical report on the air conditioning unit. Fine

5    reiterated this request in Defendant's October 18, 2010 estimate (Doc. 110-1 at 25), and

6    Robinett requested a report as well in his March 8, 2011 estimate (Doc. 110-1 at 39). The

7    Grays had the air conditioning unit permanently replaced on July 14, 2011. (Doc. 110-1 at

8    55-60.)

9         Plaintiffs argue that they sent in two technical reports in January 2011, along with

10   their other invoices, receipts and estimates. (Doc. 137-4 at 32-33.) Defendant acknowledges

11   receipt of these reports but contends that these did not constitute a proper diagnostic

12   technician's report. (Doc. 142 at 5.) Defendant claims that the Sears quote does not set forth

13   any opinions of the author that the air conditioning unit was malfunctioning due to damage

14   from the storm. (See Doc. 137-4 at 33.) The Flores proposal discusses storm damage to the

15   air conditioning coil, but does not state that the unit was not functioning, nor does it discuss

16   the cause of any malfunction. (Id. at 32.)

17        The Court disagrees with Defendant that it is entitled to summary judgment on this

18   issue. Plaintiffs did provide reports in response to Defendant's request. Although Defendant

19   argues that it was justified in denying coverage based on the reports provided, the Flores

20   report does specifically state that the outdoor coil was badly damaged due to a recent

21   hailstorm, that the fins could not be combed, and the coil could not be replaced, and that the

22   air conditioning unit needed to be replaced. The Court finds that the evidence is "such that

23   a reasonable jury could return a verdict for the nonmoving party." See Jesinger, 24 F.3d at

24   1130. Thus, the Court will deny Defendant's motion for summary judgment as to Plaintiffs'

25   claim for breach of contract for denial of coverage for damage to the air conditioner.

26        III.  Bad Faith

27        Defendant contends that the facts of this case do not establish that they engaged in any

28   bad faith towards Plaintiffs. Defendant states that it promptly acknowledged Plaintiffs' claim

and scheduled an inspection for storm damage. (Doc. 110-1 at 21-27.)  Defendant notes that it conducted two different inspections by two different adjusters, both of whom provided estimates regarding what they considered to be damage caused by the October 2010 hail storm. (Doc. 110-1 at 21-27 and 110-1 at 32-44.)  Defendant sent letters to Plaintiffs after each of these inspections explaining the adjuster's findings. (Id.)  Defendant acknowledges that it disputed the additional damage Plaintiffs claimed to the guest bathroom, bedrooms and hallway in January 2011.  However, Defendant notes that it provided Plaintiffs with its justification for the coverage denial, explaining that the repairs were made before Defendant inspected the alleged additional damage and thus were not covered by the policy provisions. (Doc. 110-1 at 46.)  Although Defendant acknowledges that the parties disagree and have different opinions regarding the additional alleged storm damages, Defendant contends that failing to accurately predict the amount of damages to which Plaintiffs were entitled does not constitute bad faith.

According to Defendant's expert, Tony Cannon, Defendant's claims handling was reasonable, consistent with insurance standards, and in good faith.  (Doc. 110-1 at 65-67.) Further, Cannon opines that the case presents a fairly straightforward and legitimate dispute between the parties as to the proper scope and cost of repairs, and that the claim could have resolved through appraisal.   (Id.)   Defendant also obtained an expert opinion from Professional Engineers Scott Morrison and Wade Sticht regarding the physical damage to Plaintiffs' residence. (Doc. 110-1 at 81-93.) Through their investigation, the engineers opine that: 1) there was no hail-caused damage to the flat roof; 2) on the main roof, four tiles had been broken by hail and could be individually replaced; 3) there was no storm related damage to the garage, sidewalk, steps, and patio; and 4) that not all of the alleged damage to the interior of Plaintiffs' home could be attributed to the hail storm.  (Id.)

Plaintiffs respond in support of their bad faith allegations against both Defendant's claim evaluation and claims handling. (Doc. 136 at 11-17.)  Plaintiffs focus their response on three main items: (1) the main roof; (2) the flat roof; and (3) damaged wooden ceiling material. (Id.)  Plaintiffs did not respond to Defendant's arguments that there was no storm

1   related damage to the garage, sidewalk, steps, or patio.  (Id.)  As to Plaintiffs' ceramic tile

2   roof, Licensed Roofing Contractor Matt Watson testified that based on the damage that he

3   inspected, the tile roof had to be replaced in its entirety.  (Doc. 137-5 at 12; Doc. 137-5 at 2-

4   9.)  Watson found extensive chipping and cosmetic damage to the tiles.  (Doc. 137-5 at 12.)

5   Watson further testified that other homes in Plaintiffs' neighborhood had to have their entire

6   roofs replaced due to the same type of storm damage.  (Id.)  Further, Mace Gray averred that

7   he would be in violation of the covenants in his homeowners association contract if he

8   performed roofing repairs with mis-matched roofing tiles, and that he also learned that

9   performing a patch repair with mis-matched tiles voids the manufacturer's and contractor's

10  warranties on his roof. (Doc. 137-1 at 6.)

11      Next, Plaintiffs argue that their flat roof sustained damage during the storm. Plaintiffs

12  cite Fine's photograph showing numerous "hail hits" across the surface of the flat roof.

13  (Doc. 137-5 at 19-20.)  Fine recommended replacing the flat roof and described it in his

14  estimate as a "rolled on roof," when it is really a three-ply membrane roof. (Doc. 136 at 13;

15  Doc. 110-1 at 23-24.) Fine admitted that this was a mistake that should be corrected. (Doc.

16  137-6 at 4-5.)  Plaintiffs further contend that Defendant, having acknowledged this error,

17  should revise its estimate and pay the proper amount of the claim, which they have not done.

18  (Doc. 136 at 13-14.)

19      Finally, Plaintiffs contend that wooden ceiling material in their home was swollen and

20  badly  stained  by  saturation  of  water  and  permanently  damaged.   (Doc. 136 at 14.)

21  Photographs taken by Robinett documented the damage and were included in his storm

22  damage estimate. (Doc. 137-6 at 12-13.)  Robinett testified that he did not get on a ladder

23  or make any effort to remove the ceiling paneling in order to assess whether damage existed

24  on the back side of the panels.  (Doc. 137-3 at 8.)  (Id.)  He specified a repair that only

25  involved applying a stain and finish to the front of the paneling without removing or

26  replacing any of the damaged material.  (Id. at 9.)

27      In the context of whether an insurer exercised bad faith in claim evaluation or claim

28  processing, the Court first looks to whether the insurer's actions were objectively reasonable,

1    which is based upon a simple negligence standard–whether the insurance company act in a

2    manner consistent with the way a reasonable insurer would be expected to act under the

3    circumstances.  Trus Joist Corp., 153 Ariz. at 104, 735 P.2d at 134.  If the insurer acted

4    objectively unreasonably, then the Court moves to the subjective inquiry and determines if

5    the insurer knew or was conscious that its conduct was unreasonable.  Id.  As to all three

6    issues, the main roof, the flat roof, and the damaged wooden ceiling material, the Court finds

7    that there are genuine issues of material fact as to whether Defendant's evaluation and

8    payment for damage was consistent with how a reasonable insurer would be expected to act

9    under the circumstances.  Both parties have provided substantive evidence in support of their

10   positions.  It is not for the Court to determine the weight of this evidence, as it is a factual

11   question for the jury.  See Lennar v. Transamerica Ins. Co., 227 Ariz. 238, 244, 256 P.3d

12   635, 641 (App. 2011).  Accordingly, the Court finds summary judgment on the issue of bad

13   faith is inappropriate and will deny Defendant's motion on this point.

14       IV.  Punitive Damages

15       Defendant argues that it is entitled to summary judgment as to Plaintiffs' punitive

16   damages claim because Plaintiffs are unable to establish that Defendant acted with the

17   requisite ill intent to support punitive damages.  (Doc. 109 at 11-13.)  Defendant contends

18   that even if its conduct supports Plaintiffs' bad faith allegations, which it does not concede,

19   this alone is insufficient for an award of punitive damages.  (Id.)

20       In a bad faith tort case against an insurance company, punitive damages may only be

21   awarded if the evidence reflects "something more" than the conduct necessary to establish

22   the tort. Rawlings v. Apodaca, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986).  In Rawlings,

23   the Arizona Supreme Court explained the parameters of punitive damages as follows:

24           We restrict [the availability of punitive damages] to those cases in
         which the defendant's wrongful conduct was guided by evil motives. Thus, to
25       obtain punitive damages, plaintiff must prove that defendant's evil hand was
         guided by an evil mind. . . . [P]unitive damages will be awarded on proof from
26       which the jury may find that the defendant was 'aware of and consciously
         disregard[ed] a substantial and unjustifiable risk that' significant harm would
27       occur.

28   151 Ariz. at 162, 726 P.2d at 578 (citations omitted).  Summary judgment on the issue of

1   punitive damages must be denied if a reasonable jury could find the requisite evil mind by
2   clear and convincing evidence; summary judgment should be granted if no reasonable jury
3   could find the requisite evil mind by clear and convincing evidence. Thompson v. Better-Bilt
4   Aluminum Prod. Co., 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992). The court construes the
5   evidence and all reasonable inferences drawn from the evidence in a light most favorable to
6   the non-moving party. Id.

7   　　　Despite the fact that the parties in this case have a bona fide dispute as to the amount
8   of Plaintiffs' storm damage claim, such a dispute does not automatically give rise to a claim
9   of punitive damages. To establish a claim for punitive damages, the evidence must support
10  a showing that Defendant (1) intended to cause injury; (2) engaged in wrongful conduct
11  motivated by spite or ill will; or (3) acted to serve its own interests, having reason to know
12  and consciously disregarding a substantial risk that its conduct might significantly injure the
13  rights of others, even though defendant had neither desire nor motive to injure. See
14  Bradshaw v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 411, 422, 758 P.2d 1313, 1324
15  (1988). In the Court's threshold review of the evidence, the Court finds that the third prong
16  presents a close question. To obtain summary judgment on the punitive damages issue in the
17  instant case, Defendant must show there is a complete failure of proof, Celotex, 477 U.S. at
18  323, such that no reasonable jury could find the requisite evil mind required for punitive
19  damages by clear and convincing evidence. See Thompson, 171 Ariz. at 558, 832 P.2d at
20  211.

21  　　　The Court further finds that taking the evidence before it and its inferences in favor
22  of Plaintiffs, a reasonable jury could conclude by clear and convincing evidence that
23  Defendant acted to serve its own interests, having reason to know and consciously
24  disregarding a substantial risk that its conduct might significantly injure the rights of
25  Plaintiffs, even though Defendant had neither desire nor motive to injure.

26  　　　　　　　　　　　　　　　　**CONCLUSION**

27  　　　Accordingly, on the basis of the foregoing,

28  　　　**IT IS HEREBY ORDERED** granting in part and denying in part Defendant's motion

for summary judgment.  (Doc. 109.)

**IT IS FURTHER ORDERED** granting Defendant's motion for summary judgment regarding breach of contract.  The Court finds that Defendant did not breach its insurance contract with Plaintiffs by denying coverage for additional storm damage to Plaintiffs' guest bathroom, hallway and bedrooms.

**IT IS FURTHER ORDERED** denying Defendant's motion for summary judgment as to Plaintiffs' allegations of breach of contract for denial of coverage for their air conditioning unit.

**IT IS FURTHER ORDERED** denying Defendant's motion for summary judgment regarding Plaintiffs' allegations of bad faith.

**IT IS FURTHER ORDERED** denying Defendant's motion for summary judgment regarding Plaintiffs' allegations in support of an award of punitive damages.

**IT IS FURTHER ORDERED** setting this case for a Final Pretrial Conference on **November 4, 2013 at 3:00 p.m.** This matter appearing ready for trial, a Final Pretrial Conference shall be held in Courtroom 605, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003. The attorneys who will be responsible for the trial of the case shall attend the Final Pretrial Conference. Counsel shall bring their calendars so that trial scheduling can be discussed.

**IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys who will be responsible for the trial of the lawsuit shall prepare and sign a <u>Proposed Pretrial Order</u> and submit it to the Court on **Friday, October 11, 2013.**

**IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall include, but not be limited to, that prescribed in the <u>Form of Pretrial Order</u> attached hereto. Statements made shall not be in the form of a question, but should be a concise narrative statement of each party's contention as to each uncontested and contested issue.

**IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37(c) that the Court will not allow the parties to offer any exhibits, witnesses, or other information that were not previously disclosed in accordance with the provisions of this Order and/or the

1   Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for
2   good cause.

3       **IT IS FURTHER ORDERED** directing the parties to exchange drafts of the
4   Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.

5       **IT IS FURTHER ORDERED** that the parties shall file and serve all motions in
6   limine no later than **Friday, October 11, 2013.** Each motion in limine shall include the legal
7   basis supporting it.  Responses to motions in limine are due **Friday, October 18, 2013.**  No
8   replies will be permitted.  The attorneys for all parties shall come to the Final Pretrial
9   Conference prepared to address the merits of all such motions.

10      **IT IS FURTHER ORDERED** directing the parties to complete the following tasks
11  by the time of the filing of the Proposed Pretrial Order if they intend to try the case before
12  a jury:

13      (1)     The parties shall <u>jointly</u> file a description of the case to be read to the jury.

14      (2)     The parties shall <u>jointly</u> file a proposed set of voir dire questions.  The voir
15          dire questions shall be drafted in a neutral manner.  To the extent possible, the parties
16          shall stipulate to the proposed voir dire questions.  If the parties have any
17          disagreement about a particular question, the party or parties objecting shall state the
18          reason for their objection below the question.

19      (3)     The parties shall file a proposed set of <u>stipulated</u> jury instructions. The
20          instructions shall be accompanied by citations to legal authority.  If a party believes
21          that a proposed instruction is a correct statement of the law, but the facts will not
22          warrant the giving of the instructions, the party shall so state.  The party who believes
23          that the facts will not warrant the particular instruction shall provide an alternative
24          instruction with appropriate citations to legal authority.

25      (4)     Each party shall submit a form of verdict to be given to the jury at the end of
26          the trial.

27      **IT IS FURTHER ORDERED** directing the parties to submit their proposed joint
28  statement of the case, joint voir dire questions, stipulated jury instructions, and verdict forms.

**IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed findings of fact and conclusions of law by the same date the Proposed Pretrial Order is due.

**IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the possibility of settlement and should settlement be reached, the parties shall file a Notice of Settlement with the Clerk of the Court.

**IT IS FURTHER ORDERED** that this Court views compliance with the provisions of this Order as critical to its case management responsibilities and the responsibilities of the parties under Rule 1 of the Federal Rules of Civil Procedure.

DATED this 18th day of September, 2013.

Stephen M. McNamee
Senior United States District Judge

1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

9    ,                              )    No. CV -PHX-SMM

)

10              Plaintiff,      )    **PROPOSED   PRETRIAL   FORM   OF**

)    **ORDER**

11 vs.                          )

)

12                               )

)

13    ,                              )

            Defendant.     )

14                               )

15

16       Pursuant to the Scheduling Order, the following is the joint Proposed Final Pretrial

17 Order   to   be   considered   at   the   Final   Pretrial   Conference   set   for

18 _____, _____ .

19     A.  **COUNSEL FOR THE PARTIES**

20        (Include mailing address, office phone and fax numbers).

21        Plaintiff(s):

22        Defendant(s):

23     B.  **STATEMENT OF JURISDICTION**.

24        Cite the statute(s) which gives this Court jurisdiction.

25        (e.g., Jurisdiction in this case is based on diversity of citizenship under Title 28

26        U.S.C. §1332.)

27        Jurisdiction (is/is not) disputed.

28

(If jurisdiction is disputed, the party contesting jurisdiction shall set forth with specificity the bases for the objection.)

C. **NATURE OF ACTION**.

Provide a concise statement of the type of case, the cause of the action, and the relief sought.

(e.g., - This is a products liability case wherein the plaintiff seeks damages for personal injuries sustained when he fell from the driver's seat of a forklift. The plaintiff contends that the forklift was defectively designed and manufactured by the defendant and that the defects were a producing cause of his injuries and damages.)

D. **CONTENTIONS OF THE PARTIES**.

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal of a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proved in order for the party to prevail on that claim or defense. Citation to relevant legal authority is required.

(e.g., In order to prevail on this products liability case, the plaintiff must prove the following elements . . . .

In order to defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . .)

E. **STIPULATIONS AND UNCONTESTED FACTS**

1. The following facts are admitted by the parties and require no proof:

2. The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

**F.   CONTESTED ISSUES OF FACT AND LAW**

1. The following are the issues of fact to be tried and decided: (Each issue of fact must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of fact). E.g., Issue # 1: Whether Plaintiff used due care.

> Plaintiff Contends: Plaintiff looked both ways before stepping into the street . . . .

> Defendant Contends: Plaintiff was chasing a ball and darted out into the street without looking . . . .

2. The following are the issues of law to be tried and determined: (Each issue of law must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of law). E.g., Issue # 1: Whether Plaintiff's suit is barred by the doctrine of laches.

> Plaintiff Contends: . . .

> Defendant Contends: . . .

**G.   LIST OF WITNESSES**.

A jointly prepared list of witnesses and their respective addresses, identifying each as either plaintiff's or defendant's, and indicating whether a fact or expert witness, must accompany this proposed order. If a witness' address is unknown, it should be so stated. A brief statement as to the testimony of each witness must also be included. Additionally, the parties shall designate which witnesses (1) shall be called at trial, (2) may be called at trial, and (3) are unlikely to be called at trial.

Additionally, the parties shall include the following text in this portion of the Proposed Pretrial Order:

The parties understand that the Court has put them on notice that they are responsible for ensuring that the witnesses they want to put on the stand to testify

- 3 -

are subpoenaed to testify, regardless of whether the intended witness is listed as a witness for the plaintiff(s) or the defendant(s). Simply because a party lists a witness does not mean that the witness will be called. Therefore, a party should not rely on the listing of a witness by the opposing party as an indication that the witness will be called. To the extent possible, the parties shall stipulate to the witnesses who will be called to testify.

H.  **LIST OF EXHIBITS**.

1. The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

2. As to the following exhibits, the parties have reached the following stipulations:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

3. As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated beneath:

a. Plaintiff's Exhibits:

(E.g., City Hospital records of Plaintiff from March 6, 1985 through March 22, 1985. Defendant objects for lack of foundation because . . . . (the objection must specify why there is a lack of foundation)).

b. Defendant's Exhibits:

(E.g., Payroll records of Plaintiff's employer which evidences payment of Plaintiff's salary during hospitalization and recovery. Plaintiff objects on the ground of relevance and materiality because (the objection must specify why there is a relevancy or materiality problem)).

I.    **DEPOSITIONS TO BE OFFERED**.

The parties shall list the depositions to be used at trial. The portions to be read at trial shall be identified by page and line number. Counsel should note objections to deposition testimony by writing the objection in the margins of that portion of the text of the deposition to which the objection is made. Moreover, these objections shall be explained in this portion of the Proposed Pretrial Order. As is the Court's practice at trial, it is <u>not sufficient</u> for an objecting party to simply state perfunctory grounds for an objection (e.g., "hearsay" or "lack of foundation") contained in the Proposed Pretrial Order. Each party must explain the basis for each perfunctory objection (e.g., <u>why</u> it is hearsay, <u>why</u> it lacks foundation, <u>why</u> it is irrelevant).

J.    **MOTIONS IN LIMINE**. Motions in limine shall be served, filed, and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

K.    **LIST OF ANY PENDING MOTIONS**

L.    **PROBABLE LENGTH OF TRIAL**

M.    **JURY DEMAND** - A jury trial (has) (has not) been requested. If a jury trial was requested, (indicate the appropriate selection):

1. the parties stipulate the request was timely and properly made;

2. the (Plaintiff or Defendant) contends the request was untimely made because: (explain why request was untimely); or

3. the (Plaintiff or Defendant contends that although the request for trial by jury was timely, the request is improper as a matter of law because: (indicate the legal basis why a jury trial would be improper).

For a Bench Trial

N-1. **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** shall be filed and served by each party in accordance with the instructions contained

in the Order Setting Final Pretrial Conference.

For a Jury Trial

N-2. **STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

O.   **CERTIFICATIONS**. The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel.

3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.

4. The parties have complied in all respects with the mandates of the Court's Rule 16 Order and Order Setting Final Pretrial Conference.

5. [Unless otherwise previously ordered to the contrary], the parties have made all of the disclosures required by the Federal Rules of Civil Procedure.

APPROVED AS TO FORM AND CONTENT:

_____     _____

Attorney for Plaintiff                              Attorney for Defendant

Based on the foregoing,

**IT IS ORDERED** that this Proposed Pretrial Order jointly submitted by the parties is hereby **APPROVED** and is thereby **ADOPTED** as the official Pretrial Order of this Court.

DATED this _____ day of _____, _____.


_____
Stephen M. McNamee
Senior United States District Judge